UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| THOMAS K. LOCKHART, JR. and DAWN W. FORD, <br><br>    Plaintiffs/Cross-Defendants, <br><br>v. <br><br>HOME-GROWN INDUSTRIES OF GEORGIA, INC. d/b/a/ MELLOW MUSHROOM, <br><br>    Defendant/Cross-Plaintiff, | Case No. 3:07-CV-297 |

**MEMORANDUM AND ORDER**

Plaintiffs Thomas Lockhart, Jr. and Dawn Ford once operated three of Mellow Mushroom's pizzeria franchises in Charlotte, North Carolina. Defendant Home-Gown Industries of Georgia, Inc. ("Mellow Mushroom") terminated those Franchise Agreements in May 2007; but, contrary to the non-compete provision of the Franchise Agreements, Lockhard and Ford opened "Moondog's Pizza Pubs" at the same locations. The plaintiffs thereafter sought a declaratory judgment in state court that the non-compete provisions are (i) invalid as a matter of law and (ii) unenforceable against them individually since they signed the Franchise Agreement in their corporate capacities only. The defendant removed this action and filed a cross-complaint alleging breach of contract, trademark infringement, and unfair competition. Jurisdiction is present. 28 U.S.C. ¶¶ 1332(a), 1441(a).

The defendant is now moving for a preliminary injunction enforcing the non-compete provision as well as other post-termination obligations on the plaintiffs. For the following reasons the Court grants the defendant's motion.

1

# FINDINGS OF FACT

Mellow Mushroom owns and franchises over 75 of its restaurants in twelve states, including North Carolina. Between August 1999 and November 2002, Mellow Mushroom granted Dawn Ford's wholly owned and operated corporations TwoMoonDog, Inc. and NODA Dog, Inc. (of which Thomas Lockhart was vice-president) three separate licenses to operate Mellow Mushroom restaurants in Charlotte (TwoMoonDog, Inc., NODA Dog, Inc. and Kenil Dog, Inc.).[1] Contemporaneously with the execution of each Franchise Agreement, Lockhart and Ford signed a written Guaranty and Assumption of Obligations, under which they each personally and unconditionally guaranteed to Mellow Mushroom that they would be "bound by ... each and every provision" in the Franchise Agreements, including specifically the "obligations to take or refrain from taking specific actions or to engage or to refrain from engaging in specific activities." (See Brasch Decl., Ex. 4).

## Post-Termination Obligations Under the Franchise Agreements

By signing the Franchise Agreements, NODA Dog and TwoMoonDog (and Lockhart and Ford) incurred certain post-termination obligations. Section 20(b), for example, requires that, upon termination, the franchisees not hold themselves out to the public as present or former franchisees of Mellow Mushroom; cease using Mellow Mushroom's trade names, trade and service marks, trade secrets and related intellectual property; and return the Mellow Mushroom Operations Manual and

---

[1] Specifically, on August 26, 1999, Mellow Mushroom and TwoMoonDog executed a Franchise Agreement for a Mellow Mushroom restaurant located at 4100 Carmel Road in Charlotte, North Carolina. Approximately two years later, on July 2, 2001, TwoMoonDog was granted a similar license to operate a Mellow Mushroom restaurant at 4422 Colwick Road. Similarly, on November 14, 2002, NODA Dog was granted a license to operate a Mellow Mushroom restaurant at 3228 North Davidson Street.

The Carmel Road Licensing Agreement (and the corresponding Guarantee and Assumption of Obligations) was signed in Georgia. The two subsequent Franchise Agreements (and the corresponding Guarantees) were signed in Georgia by Mellow Mushroom and then mailed to Lockhart and Ford in North Carolina.

assign to Mellow Mushroom all telephone numbers used in operating the former Mellow Mushroom restaurants.

Section 18 describes the restrictive covenants set forth in the Agreements. Specifically, Section 18(b) provides that for a period of two years "beginning on the effective date of termination or expiration or the date on which all persons restricted by this Subsection begin to comply with this Subsection, whichever is later, neither Franchisee nor any of its owners will have any direct or indirect interest . . . in any competitive business . . . ." Competitive business is defined as "any restaurant or food service business featuring pizza as its primary product" (in the case of the Carmel Road Franchise Agreement) and as "any restaurant or food service business that features pizza as a primary or significant menu item" (in the case of the Colwick Road and North Davidson Street Franchise Agreements). The Colwick Road and North Davidson Street Franchise Agreements prohibit the operation of a competitive business (i) at the restaurant site; (ii) within two miles of the restaurant site; and (iii) within two-miles of any other Mellow Mushroom restaurant in operation or under construction as of the termination or expiration of the Franchise Agreements. The non-competition provision in the Carmel Road Franchise Agreement similarly encompasses (i) the restaurant site, (ii) the Exclusive Territory that was granted under that Agreement (which encompasses a radius of .1 mile from the restaurant's front entrance), and (iii) the five miles surrounding any other Mellow Mushroom Restaurant in operation or under construction as of the termination or expiration of the Carmel Road Franchise Agreement. Section 23(D) of the Franchise Agreements further provides that if any of these restrictions are "deemed unenforceable by virtue of its scope . . . but would be enforceable by reducing any part or all of it, Franchisor and Franchisee agree that the covenant will be enforced to the fullest extent possible . . . ."

Finally, Section 23(I) of the Franchise Agreements specifies, that while "this agreement and all claims arising [therefore] . . . will be governed by the laws of the State of Georgia without regard to its conflict of laws principles . . . the enforceability of those provision of this agreement which relate to restrictions on franchisees (and its owners') competitive activities will be governed by the laws of the state in which the restaurant is located."

<u>Events Leading to Mellow Mushroom's Termination of the Franchise Agreements</u>

Under Franchise Agreements, TwoMoonDog and NODA Dog were required to pay Mellow Mushroom certain royalty and marketing fees, an obligation guaranteed by Lockhart and Ford. When all four failed to comply with this obligation, Mellow Mushroom filed suit against Lockhart, Ford, TwoMoonDog, NODA Dog and Kenil Dog on October 25, 2005, in the United States District Court for the Northern District of Georgia. On February 24, 2006, that court entered judgment in favor of Mellow Mushroom, and against Lockhart and Ford, and TwoMoonDog, NODA Dog and Kenil Dog, jointly and severally, in the amount of $1,345,458.00. <u>See Home-Grown Industries of Georgia, Inc. v. TwoMoonDog, Inc. et al.</u>, No. 05-2758 (N.D. Ga. Feb. 22, 2006) (Agreed Judgment in favor of plaintiff).

Shortly thereafter, Lockhart and Ford jointly filed a Bankruptcy Petition under Chapter 7 of the United States Bankruptcy Code. See *In re* Thomas Kirby Lockhart, Jr., Dawn Frances Ford, No. C7-06-32101 (Bankr. W.D.N.C. filed Dec. 8, 2006). At the same time, and without notifying Mellow Mushroom, TwoMoonDog and NODA Dog purported to transfer their respective Franchise Agreements to an entity named NODA Investments, LLC (of which Lockhart and Ford are the principals and owners), which itself subsequently filed a Bankruptcy Petition under Chapter 11 of

4

the United States Bankruptcy Code. See In re NODA Investment Co., LLC, No. C11-06-32129 (Bankr. W.D.N.C. filed Dec. 11, 2006).

On March 27, 2007, Mellow Mushroom advised TwoMoonDog, NODA Dog and NODA Investments that TwoMoonDog and NODA Dog were in default of their obligations under their respective Franchise Agreements, based on, among other things: (i) the unauthorized assignment of the Franchise Agreements to NODA Investments; and (ii) the failure to pay fees due under those Agreements. On April 27, 2007 – after it was granted relief from the automatic bankruptcy stay – Mellow Mushroom advised Lockhart, Ford, TwoMoonDog and NODA Dog that unless they cured their defaults, the Franchise Agreements would terminate, effective May 4, 2007. TwoMoonDog, and NODA Dog did not cure any of the defaults, and the Franchise Agreements were terminated accordingly.

Plaintiffs' Post-Termination Activity and Defendant's Motion for an Injunction

Shortly after the licensing agreements were terminated, Lockhart and Ford began operating "Moondog's Pizza Pub" at the same locations where they formerly operated Mellow Mushroom restaurants. There is near identity between the ingredients in Moondog's and Mellow Mushroom's pizza and hoagie offerings. (Compare Canderozzi Decl., Ex. 1 with Ex. 2).[2]

Moreover, at least until July 2007, the various Moondog's Pizza Pubs continued to display

---

[2] At oral argument, Lockhart conceded that the menus are similar because "pizza is pizza." The Court disagrees. Ever since Neapolitan Gennaro Lombardi opened the first American pizzeria in New York's Little Italy in 1905, this confection of dough, cheese, tomato sauce, spices and assorted toppings has inspired intense local and regional rivalries. Chicagoans vehemently reject any "Second City" designation when it comes to their succulent "deep dish" pizzas; and, as counsel has acknowledged, Giordanno's and Gino's East have their advocates (although the Court prefers Pizzeria Uno and Due). Elsewhere, New Yorkers prefer it thin and by the slice, while San Franciscans dote on their gourmet pizza. Even in the south, barbecue has begun to appear atop pizza. Wherever and whenever pizza is sold, there are few quicker ways to set Americans to bickering then to ask them who makes the best pizza.

5

some of Mellow Mushroom's marks, signs and related materials.[3] And, as of August 2007, Lockhart and Ford also had not returned Mellow Mushroom's Operations Manual or assigned the telephone numbers of their former franchise to Mellow Mushroom.[4]

This conduct has led Mellow Mushroom to file its counterclaim to the plaintiffs' declaratory action and request an injunction enforcing the non-compete agreement, i.e., enjoining the plaintiffs from offering pizza as "a primary or significant menu item" until the expiration of the non-compete clauses (two years from the date on which Lockhart and Ford begin to comply with the restrictions in Section 18(B)), as well as the other post-termination restrictions described in Section 20(B).

## DISCUSSION

A.   Applicable Law

The Court applies North Carolina state law, including its choice-of-law rules, as to the parties' state law claims. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Pursuant to the terms of the instrument, the non-compete portions of the Franchise Agreement at issue are governed by North Carolina substantive law. Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980). The Court also finds that it is clear, under the Guarantee and Assumption of Obligations, that Lockhart and Ford agreed to assume every obligation under the Franchise Agreement at-issue (including specifically the "obligations to take or refrain from taking specific

---

[3] For example, the Carmel Road restaurant continued to display a mural that says "Mellow Mushroom" (in lettering that spans 5-7 feet), its restrooms are labeled "Mels" and "Femels" (Mellow Mushroom characters), and continue to use a display cup that says "Mellow Mushroom." The Colwick Road restaurant displayed, on its outside fence, a large metal cutout of Mellow Mushroom's "Mel" character Mark. "Mel" also appeared on the menu board of that restaurant. (See Canderozzi Decl., ¶¶ 4-5). Lockhart and Ford do not dispute this allegation, but contend that they have since eliminated any vestiges of the Mellow Mushroom Marks.

[4] As a result, various telephone directories identify the telephone numbers of the Moondog's Pizza Pubs as being the number of TwoMoonDog's and NODA Dog's former Mellow Mushroom restaurants. (See Canderozzi Decl., ¶ 6).

actions or to engage or to refrain from engaging in specific activities"), and therefore necessarily agreed to abide by the consent to jurisdiction clause contained in the Agreement despite the absence of a forum selection clause in the Guarantee.

The Court applies federal standards when considering a request for a preliminary injunction. Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1991).

B.     Standard of Review

Injunctive relief "is considered an extraordinary remedy which is to be applied 'only in limited circumstances,' where, in the Court's discretion, the moving party has established that the circumstances demand it." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (citations omitted). In determining whether to issue a preliminary injunction, the Fourth Circuit applies the familiar analytical framework described in Blackwelder Furniture Co. v. Seilig Manufacturing. Co., 550 F.2d 189 (4th Cir. 1977), and later in Direx. First, the moving party must make a "clear showing" that it will suffer irreparable harm if the court denies its request. Direx, 952 F.2d at 812-13. Second, if the moving party establishes irreparable harm, the Court balances the likelihood of irreparable harm to the moving party from the failure to grant interim relief against the likelihood of harm to the non-moving party from the grant of such relief. Id. at 812. Third, if the balance tips decidedly in favor of the moving party, "a preliminary injunction will be granted if the moving party has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." Id. at 813. However, if balance of likely harms stands equal, the moving party's probability of success assumes real significance, and interim relief shall be granted only upon a clear showing of a likelihood of

success on the merits. Id. Finally, the Court must evaluate whether the public interest favors granting preliminary injunctive relief. Id.

C.  Breach of Non-Compete Provision

In this case, for the following reasons, the Court finds that the defendant has met its burden under Blackwelder with regards to the plaintiffs' alleged breach of the non-compete provisions.

    1.  Mellow Mushroom has demonstrated that it is likely to be irreparably harmed.

Certainly, Lockhart's and Ford's breach of the non-compete provision and the Mellow Mushroom's resulting loss of exclusivity rights, sales, profits or market share alone do not constitute the sort of harm sufficient to warrant injunctive relief.[5] Mellow Mushroom, however, has demonstrated at least two reasons that the plaintiffs' conduct is likely to cause it "actual and imminent" harm, for which "no adequate compensatory or other corrective relief will be available at a later date." Sampson v. Murray, 415 U.S. 61, 90 (1974).

First, Mellow Mushroom has garnered a reputation with consumers who go to its restaurants based on that reputation or their own experiences with its products. By operating similar restaurants in the exact locations that were formerly Mellow Mushroom restaurants, Lockhart and Ford will reap the goodwill that Mellow Mushroom had established over the course of the franchise and, in part, comes from the public's association of the location of Moondog's restaurants with Mellow Mushroom (an association that Lockhart and Ford appear to have encouraged).[6] Accordingly,

---

[5] See, e.g., Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987) (rejecting argument that irreparable harm automatically follows breach of covenant not-to-compete, especially in light of plaintiff's inability to show loss of goodwill or any other type of harm); Moses H. Cone Mem. Health Servs. Corp. v. Triplett, 605 S.E.2d 492, 497 (N.C. App. 2004). It is likewise insufficient that Section 18 of the Franchise Agreements provides that a breach of the non-compete would "result in irreparable harm to [Mellow Mushroom] for which there will be no adequate remedy at law." See, e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corporation, 356 F.3d 1256, 1259 (10th Cir. 2004) (holding that Licensing Agreement stipulation that breach would result in "irreparable harm" not determinative if whether there is actual irreparable harm).

[6] For example, Lockhart and Ford assert on the first page of Moondog's menu, "Different Name but still the

8

Mellow Mushroom's goodwill and reputation would be damaged and it will be difficult for Mellow Mushroom to re-enter the markets serviced by its restaurants. An injunction is thus necessary, both to prevent the usurping of Mellow Mushroom's goodwill and to allow the public's association of the location of Moondog's restaurants with Mellow Mushroom to dissipate. See, e.g., Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994); Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509-10 (7th Cir. 1994).

Second, as a result of Lockhart's and Ford's breach of the non-compete agreement, Mellow Mushroom has had trouble attracting another franchisee to the area now serviced by Moondog's, and its relationships with other franchisees has been damaged.[7] Such harms are clearly irreparable. See, e.g., Quizno's Corp. v. Kampendahl, No. 01-6433, 2002 WL 1012997, at *7 (N.D. Ill. 2002) (holding that franchiser would be irreparably harmed if injunction was denied since a message would be sent to other franchisees that their franchise agreements provide no protection to other franchisees

---

BEST Beer Selection, Great Food and Awesome Staff." (Canderozzi Decl. Ex. 1). See also, *supra*, page 6, n. 3 (discussing the plaintiff's post-termination use of Mellow Mushroom's Marks and trade dress at two of the Moondog's Pizza Pubs).

[7] See Brauch Decl. at ¶ 17 ("I have been asked by various franchisees why Lockhart and Ford are being allowed to sell imitation Mellow Mushroom Pizzas and Hoagies") and id. at ¶ 18 ("Since the termination, I have undertaken efforts to re-franchise the territories in which TwoMoonDog's and NodaDog's Mellow Mushroom restaurants were located. The individuals I have spoken to have been unwilling to pursue franchises in those markets where Moondog's Pizza Pubs continue to operate."). Lockhart's attorney objects to the affidavit and the information contained therein as being inadmissible hearsay evidence. At the preliminary injunction stage, however, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). KOS Pharms., Inc. v. Andrx, 369 F.3d 700 (3d Cir. 2004); Commodity Futures Trading Comm'n v. IBS, Inc., 113 F. Supp. 2d 830, 850 (W.D.N.C. 2000) (rejecting defendant's argument that affidavits presented as evidence in support of plaintiff's motion for preliminary injunction were insufficient), affirmed by Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187 (4th Cir. 2000); Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1171 (7th Cir. 1997); Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995); Sierra Club, Lone Star Chapter v. FDIC, 992 F.2d 545, 551 (5th Cir. 1993); Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir. 1986); Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984); cf. Heideman v. South Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.").

and may be disregarded at will).[8]

    2.    The balance of harms stands relatively equal.

While cases frequently speak in the short-hand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied. See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 285 (4th Cir. 2000).

Here, an injunction would prohibit Moondog's Pizza Pubs from featuring pizza as its "primary product" or "or significant menu item" until the expiration of the non-compete clauses. Based on the financial records, pizza sales amount to approximately 46% of Moondog's total monthly revenue at each restaurant. (See Lockhart Aff, Ex. C). The Court thus finds that the balance of the likely harms stands relatively equal, and therefore there must be a strong probability of success on the merits of the plaintiff's claim before an injunction is issued.[9]

    3.    Mellow Mushroom has shown that it is likely to succeed on the merits.

In North Carolina, a covenant not to compete is valid and enforceable if it is (1) in writing, (2) based upon valuable consideration, (3) reasonably necessary for the protection of legitimate business interests, (4) reasonable as to time and territory, and (5) not otherwise against public policy.

---

[8] The Court also notes, but does not find, that Mellow Mushroom is also likely to suffer irreparable harm because given Mellow Mushroom's unsatisfied judgment, and the subsequent bankruptcy filing by Lockhart and Ford, and by NODA Investments, nothing in the record suggests that Lockhart and Ford would be good for monetary damages that will have accumulated by the time this case is decided on the merits, and Mellow Mushroom therefore may not be able to collect a subsequent judgment in its favor. Signode Corp. v. Weld-Loc Sys. Inc., 700 F.2d 1108, 1111 (7th Cir. 1983).

[9] Although Mellow Mushroom argues in its motion that "[a]ny harm Plaintiffs might suffer due to the issuance of an injunction ... would be solely the result of their breaches," the Fourth Circuit has expressly held that courts should not give less weight to a party's likely harm because such harm is allegedly "self-inflicted." Scotts Co., 315 F.3d at 284.

Kennedy v. Kennedy, 584 S.E.2d 328, 333 (N.C. Ct. App. 2003) (citing A.E.P. Industries, Inc. v. McClure, 302 S.E.2d 754 (N.C. 1983)). Covenants not to compete restrain trade and therefore are strictly scrutinized. United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 382-83 (N.C. 1988).

Here, the covenants are in writing and ancillary to the Franchise Agreements – and because there can be no claim that the public would be harmed by the enforcement of the covenants – the first, third and fifth factors are clearly satisfied. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) ("[T]he overriding public interest is in the honoring and enforcement of [reasonable] non-compete agreements.").

With respect to the second factor, all of the covenants run for a two-year term. That is well within the range that the North Carolina courts have deemed reasonable. See Jewel Box Stores, 158 S.E.2d 840, 843 (N.C. 1968) (enforcing ten-year covenant); Sineath v. Katzis, 218 N.C. 740, 12 S.E.2d 671 (N.C. 1940) (fifteen-year covenant upheld); Keith v. Day,194, 343 S.E.2d 562, 568 (N.C. Ct. App. 1986) (two-year covenant reasonable). The geographic scope of the covenants is likewise well within the permissible range. See, e.g., Forrest Paschall Mach. Co. v. Milholen, 220 S.E.2d 190, 197 (N.C. Ct. App. 1975) (350 mile non-compete upheld); Robins & Weill, Inc. v. Mason, 70 N.C. App. 537, 539, 320 S.E.2d 693, 659 (1984) (two-county wide covenant enforced); Keith v. Day, 81 N.C. App. at 194-95, 343 S.E.2d at 568 (greater Raleigh area enforceable). North Carolina courts likewise have indicated that the final prong of the covenants – which prohibits the plaintiffs from operating within a specified distance of Mellow Mushroom's other franchisees – is also reasonable. See Manpower of Guilford County, Inc. v. Hedgecock, 257 S.E.2d 109, 115 (N.C. Ct. App. 1979) (stating that while employer had no legitimate interest in preventing employee "from competing with

11

other Manpower franchises in other cities or states . . . the franchisor, may have a legitimate right to prohibit its franchisees from competing with it or its affiliates throughout the country").[10]

Finally, as noted previously, Mellow Mushroom has articulated several legitimate interests warranting enforcement of the covenants, namely its interest (i) in attracting a new franchisee to the market in which the terminated franchisee is operating; (ii) in preventing the customer confusion that inevitably occurs when a terminated franchisee continues serving the same products at the same location from which it previously operated its franchise; and (iii) in protecting its franchise system as a whole. (See supra, at 8-9).

4. The public interest favors an injunction.

"It is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." Sonontone Corp. v. Baldwin, 42 S.E.2d 352, 355 (N.C. 1947). In this case, there is nothing in the record to indicate that the non-compete agreement is unreasonable or that the public interest would be in some other way damaged by the plaintiffs' absence from the restricted area. Mellow Mushroom, however, would suffer the loss of the benefit of its bargain in the non-compete agreement if it were not enforced. As such, the public interest favors an injunction.

D. Other Post-Termination Restrictions

The parties agree that (1) Lockhart and Ford failed to assign the telephone numbers, failed to return the Operations Manuals, and continued using the Mellow Mushroom Marks after the Franchise Agreement was terminated; and (2) that Mellow Mushroom has met its burden under

---

[10] The Court further finds that the restrictive covenant is reasonable as the Franchise Agreement provides that this Court has the power to enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable. Welcome Wagon Int'l, Inc. v. Pender, 120 S.E.2d 739, 742 (N.C. 1961)

12

Blackwelder. Therefore, the Court will enter an injunction as described in Defendant's proposed injunction. (See Doc. No. 17: Agreed Permanent Injunction).

**CONCLUSION**

In conclusion, because the balancing of all the applicable factors weighs strongly in favor of granting injunctive relief, Defendant's Motion for Preliminary Injunction (Doc. No. 7) is **HEREBY GRANTED** as follows:

1. Beginning (1) one week from the issuance of this order, Plaintiffs Lockhart and Ford, their affiliates, subsidiaries, officers, agents, servants and employees, and those persons acting in active concert or participation with them, or under their control, are instructed to abide by the restrictions described in Section 18 ("NONCOMPETITION") of the Franchise Agreements.

2. As described in Defendant's Proposed "Agreed Permanent Injunction" (Doc. No. 17), Plaintiffs Lockhart and Ford, their affiliates, subsidiaries, officers, agents, servants and employees, and those persons acting in active concert or participation with them, or under their control, are enjoined from:

    a. Using the Mellow Mushroom Marks or any trademark, service mark, logo, trade name, name or word that is confusingly similar to the Mellow Mushroom Marks;

    b. Otherwise infringing the Mellow Mushroom Marks or using any similar designation, alone or in combination with any other components;

    c. Passing off any of their goods or services as those of Mellow Mushroom or its authorized franchisees;

    d. Causing likelihood of confusion or misunderstanding as to the source or

sponsorship of their business, products or services; and

e. Causing likelihood of confusion or misunderstanding as to their affiliation, connection or association with Mellow Mushroom and its franchisees or any of Mellow Mushroom goods or services.

3. Lockhart and Ford shall promptly eliminate any advertising under the Mellow Mushroom Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Plaintiffs' cost.

4. All labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Lockhart and Ford, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them bearing the Mellow Mushroom Marks, and all plates, molds, and other means of making the same, if any, shall be delivered to Mellow Mushroom at Plaintiffs' cost.

5. With ten (10) days of the entry of this Order, Lockhart and Ford shall:

a. return to Mellow Mushroom all copies of all Operating Manuals provided to Lockhart and Ford in connection with the operation of the former Mellow Mushroom Restaurants;

b. assign to Mellow Mushroom any telephone numbers used in connection with the operation of their former Mellow Mushroom Restaurants, including telephone numbers (704) 341-8236, (704) 362-5335, and (704) 377-2422. Lockhart and Ford shall take any and all necessary steps, and execute whatever documents may be reasonably necessary, to effectuate the assignment of the telephone numbers.

Signed: September 10, 2007

Robert J. Conrad, Jr.
Chief United States District Judge